### 29036.   COPELAND *v.* THE STATE.

DECIDED NOVEMBER 11, 1941.

*J. W. Dennard,* for plaintiff in error.

*Harvey L. Jay, solicitor-general pro tem.,* contra.

MACINTYRE, J.   Only headnotes 3 through 7 will be discussed. The witness Boyd was allowed to testify: "I have examined the signatures or names and apparent signatures on these pay-rolls for the first and last half of April, 1940, and the first half of May, in so far as the name of Roy Spivey is concerned, and the signature on the pay-roll for the second half of April is not the same as that on the pay-roll for the first part of April and the first part of May. I have compared the handwriting to that of Mr. Copeland, and I have compared the names on the time sheet in the handwriting of Mr. Copeland with the name of Roy Spivey appearing on the pay-

rolls for the first half of April and the first half of May and the indorsement on the back of the checks issued on these pay-rolls. I am not an expert on handwriting and can not say that there is a similarity in the handwriting on the pay-rolls for the first half of May and first half of April as to the name of Roy Spivey, but there appears to be in some instances." The defendant objected to this testimony on the ground that "the witness had not qualified as an expert and that his opinion would not be worth anything to the jury and was irrelevant and immaterial."

On the question as to the admissibility of testimony of this character Mr. Wigmore says: "The effect of the application of the opinion rule . . is at once to exclude the testimony of *lay witnesses*. Where specimens are brought into court, there is no need of any opinion based on them except from persons skilled in handwriting; for the jury can judge as well as any other laymen; moreover, they would always have to be brought into court, where the witness does not have personal knowledge of their genuineness, because their genuineness would have there to be proved by other witnesses." 7 Wigmore on Evidence 188, § 1997; 1 Wharton's Criminal Evidence, 887, § 424 g. Mr. Wigmore recognizes certain exceptions to the rule as to the exclusion of the testimony of lay witnesses, and states that wherever a lay witness is to speak from having already seen the person write or from correspondence he must bring the documents into court, and he may then use them in testifying, also by comparison made in court by the possessor of ancient documents, and such a person is qualified to speak as to that handwriting after comparing the ancient documents with the disputed writing. These two exceptions, he says, seem to have survived by tradition from the 1800s. 7 Wigmore on Evidence, 198, 199, §§ 2005, 2006.

Our legislature likewise has allowed lay witnesses, subject it seems to similar qualifications, to testify as to handwriting. "Proof of handwriting may be resorted to in the absence of direct evidence of execution. In such case, any witness shall be competent to testify as to his belief, who shall swear that he knows or would recognize the handwriting. The source of his knowledge shall be a question for investigation, and shall go entirely to the credit and weight of his evidence." Code, § 38-708. It is further provided: "Other writings, proved or acknowledged to be genu-

ine, may be admitted in evidence for the purpose of *comparison by the jury*. Such other new papers, when intended to be introduced, shall be submitted to the opposite party before he announces himself ready for trial." (Italics ours.) Code, § 38-709. Thus it seems to be the law in this State that where the issue is whether a document was made by one, the question is not one of law but of fact for determination by the jury. *Gibson* v. *Gibson,* 54 *Ga. App.* 187 (2), 189 (187 S. E. 155). A writing acknowledged by the defendant to have been done by him (here the pay roll) is admissible for comparison with the forged order by the jury themselves, who are as competent to make such comparison as the nonexpert witness, and it is their right and duty to form their own conclusion uninfluenced by the opinions of nonexpert witnesses. *Thomas* v. *State,* 59 *Ga.* 784 (5) ; *Waddell* v. *Watkins Medical Co.,* 25 *Ga. App.* 657 (4) (104 S. E. 250). But, even though the other writings offered for the purpose of comparison be "acknowledged as genuine," the defendant is entitled to know that evidence as to the comparison of signatures will be resorted to, and to have such writings submitted to him before he announces ready for trial. *Marietta Fertilizer Co.* v. *Gary,* 22 *Ga. App.* 604 (6) (96 S. E. 711) ; *Thomas* v. *State,* 39 *Ga. App.* 659, 661 (148 S. E. 277).

Opinions are to be given by experts, as well on the question of handwriting as on any other question. Persons other than experts are to testify to facts, not opinions. If one who was not an expert were permitted to give his opinion as to the genuineness of the handwriting, based merely on the comparison at the trial of the disputed writing with one proved to be genuine, he would be usurping the duty of the jury. The jury, by statute (Code, § 38-709), may compare these writings. The evidence should have been excluded. It is true that a party who is not an expert, but who is acquainted with the handwriting of another, may testify whether a given signature is in the proper handwriting of the person with whose handwriting he is acquainted; but only experts, persons accustomed to and skilled in the matter of handwriting, may institute comparison between writings of unquestioned genuineness and writings in dispute and give an opinion. *Wimbish* v. *State,* supra; *Piedmont & Arlington Life Insurance Co.* v. *Lester,* 59 *Ga.* 812; Griffin *v.* State, 90 Ala. 596, 600 (8 So. 670) ; McKay *v.* Lasher, 42 Hun (N. Y.), 270, 272; Johnston *v.* Bee, 84 W. Va. 532 (100

S. E. 486, 7 A. L. R. 252). The reason for the distinction is obvious. The practiced eye of the expert will enable him to perceive the distinguishing characteristics or features in different specimens of handwriting, and at once to indicate the points of similarity or dissimilarity, though he may be entirely unacquainted with the specimens presented. By long practice and observation he has become skilled in such matters. Not so with the nonexpert. It is only when he has become familiar with the peculiarities of a handwriting, as one becomes familiar with the countenances of his friends or the characteristics of objects of common observation, that he is able to distinguish between it and other specimens that may bear only a slight resemblance to it. Woodman v. Dana, 52 Maine, 9, 15.

The controlling issue in this case was whether the defendant had forged the signature of Roy Spivey to the pay-roll and to the check. It is true that the witness whose testimony is challenged testified that he had been employed in the accounting department of the State Highway Department for the last ten years, and had had general supervision of distributions made under pay rolls during 1940, covering the period in question, but the witness was not shown to be an expert in judging handwriting or in the comparison of hands; in fact he voluntarily denied that he was an expert; nor had he any knowledge whatever of either the handwriting or signature of the defendant, or of the handwriting or signature of Spivey (whose name was alleged to have been forged), and yet he was permitted to give his opinion as to the similarity or genuineness of the signature in question by comparing it with the signature and handwriting admitted by the defendant to be genuine. Under the most liberal rule adopted by the courts of the Union, this testimony could and should not have been received. First National Bank of Omaha v. Lierman, 5 Neb. 247, 250. We therefore think the testimony was erroneously admitted and a new trial should have been granted.

Judgment reversed. Gardner, J., concurs.

BROYLES, C. J., dissenting. Ground 5 of the motion for new trial shows that the witness Bond was asked the following question and gave the following answer: Q. "State whether or not the handwriting on the pay-roll for the first half of May and April as to the name of Roy Spivey is similar handwriting to that on the time pay-rolls prepared by Mr. Copeland?" A. "I am not an expert on handwriting and can not say that there is a similarity. It

appears to be in some instances." The objection to the testimony was "that the witness had not qualified as an expert and that his opinion would not be worth anything to the jury and was irrelevant and immaterial." "In a ground of a motion for a new trial which complains of the admission of testimony it must appear how the testimony which was admitted over objection was material and how it could have been hurtful to the plaintiff in error." *McGuire* v. *State, 29 Ga. App.* 192 (114 S. E. 719), and cit.

In the case at bar it is not even alleged in the ground that the testimony was hurtful or prejudicial to the movant. Furthermore, another witness for the State (W. M. Rawlins) testified that he was accountant clerk in the Fitzgerald division of the State Highway Department, and that the accused was an employee in that division; that he (the witness) had been handling for six or eight months the time reports made by the accused, and that in his opinion the name of Roy Spivey appearing on the pay roll for the first half of April and May was in the handwriting of the accused. This testimony was admitted without objection. This is not a close case. The evidence amply authorized the verdict, and I do not think the admission of the testimony complained of requires a reversal of the judgment.